NO.  12-16001-EE

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

———————

**UNITED STATES OF AMERICA,**
*Plaintiff/appellee,*
**v.**

**DOUGLAS NEWTON,**
*Defendant/appellant.*

———————

**On Appeal from the United States District Court
for the Southern District of Florida**

———————

**PETITION FOR REHEARING *EN BANC***

———————

**MICHAEL CARUSO**
  **Federal Public Defender**
**TRACY DREISPUL**
  **Assistant Federal Public Defender**
  **Attorney for Appellant Douglas Newton**
  **150 West Flagler Street, Suite 1500**
  **Miami, Florida 33130-1555**
  **Telephone No. (305) 536-6900**

**THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)**

---

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

## United States v. Douglas Newton
## Case No. 12-16001-EE

Appellant, Douglas Newton, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Caridad, Miguel, Assistant Federal Public Defender

Caruso, Michael, Federal Public Defender

Cooke, Marcia G., United States District Judge

Davidson, H. Ron, Assistant United States Attorney

Dreispul, Tracy, Assistant Federal Public Defender

Ferrer, Wifredo, United States Attorney

Galvin, Harriett, Assistant United States Attorney

Goodman, Jonathan, United States Magistrate Judge

Newton, Douglas, Appellant/Defendant

Palermo, Peter R., United States Magistrate Judge

Rivero, Laura Thomas, Assistant United States Attorney

Salyer, Kathleen M., Assistant United States Attorney

Schultz, Anne R., Assistant United States Attorney

Soto, A. Cristina Perez, Assistant United States Attorney

**Statement of Counsel**

I express a belief, based on reasoned and studied professional judgment, that the panel decision is contrary to the following precedents of this Circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court:

*United States v. Svete*, 556 F.3d 1157 (11th Cir. 2009) (*en banc*)

*United States v. Pendergraft,* 297 F.3d 1198 (11th Cir. 2002)

*United States v. Medina*, 485 F.3d 1291 (11th Cir. 2007)

*United States v. Snyder*, 291 F.3d 1291 (11th Cir. 2002)

*United States v. Tatum*, 138 F.3d 1344 (11th Cir. 1998).

Respectfully submitted,

s/*Tracy Dreispul*
Assistant Federal Public Defender
Attorney of Record for Douglas Newton

i

# TABLE OF CONTENTS

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

Statement of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Citations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case and the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Arguments in Support of Rehearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.     A "scheme to defraud" requires proof of a material misrepresentation.. . . . 6

II.    The panel opinion erred in affirming a loss amount based on speculation

       that the stock was "worthless," where the district court refused to

       consider expert testimony regarding the value of the stock.. . . . . . . . . . . . 10

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appendix:

*United States v. Newton*,

       2014 WL 1045685 (11th Cir. Mar. 19, 2014).. . . . . . . . . . . . . . . . . . . . . . A-1

# TABLE OF CITATIONS

**CASES**:

*Durland v. United States*,

    161 U.S. 306, 16 S. Ct. 508 (1896).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Neder v. United States*,

    521 U.S. 1, 119 S. Ct. 1827 (1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Norton v. United States*,

    92 F.2d 753 (9th Cir. 1937). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Skilling v. United States*,

    561 U.S. 358, 130 S. Ct. 2896 (2010).. . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Hasson*,

    333 F.3d 1264 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Medina*,

    485 F.3d 1291 (11th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . i, 5, 11, 12

*United States v. Newton*,

    2014 WL 1045685 (11th Cir. Mar. 19, 2014).. . . . . . . . . . . . . . . . 5-7, 9, 11

*United States v. Olis*,

    492 F.3d 450 (5th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

iii

*United States v. Pendergraft,*

    297 F.3d 1198 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . i, 4, 5, 7, 9

*United States v. Snyder*,

    291 F.3d 1291 (11th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . i, 4, 5, 10, 11

*United States v. Svete*,

    556 F.3d 1157 (11th Cir. 2009) (*en banc*). . . . . . . . . . . . . . . . . . . . i, 5, 7, 8

*United States v. Tatum*,

    138 F.3d 1344 (11th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . i, 5, 11

*United States v. Wetherald*,

    636 F.3d 1315 (11th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATUTORY AND OTHER AUTHORITY:

18 U.S.C. § 1341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Crim. P. 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

U.S.S.G. § 2B1.1(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

iv

## Statement of the Case and the Facts

Douglas Newton appeals his convictions for mail fraud, securities fraud, and conspiracy, to this Court.  Newton was the Director, Chief Executive Officer, and primary shareholder of  Real American Brands,  Inc. ("RLAB"), a publicly traded penny stock company.  He became the target of a sting operation, during which undercover FBI agents offered to have a fictitious pension fund (the "pension fund") purchase stock in RLAB in exchange for kickback payments.  According to the terms of the deal, all of which were determined by the FBI, the pension fund would purchase restricted shares of RLAB stock at the market price for free-trading stock. In exchange, Newton would pay a 30% kickback to a fictitious consulting firm. The cooperating witness who brought Newton into the scheme also wanted $5,000 worth of stock for each transaction.  *See* G.Ex.2A:25.

Newton agreed to the government's terms.  In the first transaction, the pension fund transferred $20,000 to RLAB, in exchange for 4,000,000 restricted shares of RLAB common stock.  *See* DE219:24-25.  In return, Newton sent a check for $6,000 to the fake consulting firm.   DE225:61-66.  A second subscription agreement was executed on April 7, 2009, for 2,222,222 shares of common stock, at  .009 a share, or $20,000.  DE219:239-42.  Newton again sent $6,000 to the fake consulting firm. DE219:41-42.  DE225:75.

1

When the undercover agents indicated they did not want to conduct further deals with Newton, Newton suggested that the pension fund do business with a company owned by Yan Skwara. DE220:120. Skwara conducted one transaction in June and one in July of 2009, both for $20,000. After the first deal, Skwara sent Newton four separate checks totaling $6,000. DE220:53-61.

At the close of the government's evidence, Mr. Newton moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29. DE225:153. The motion was denied. DE225:154. Mr. Newton entered documents into evidence, but did not call any witnesses. DE225:167-70. He did not renew his motion for judgment of acquittal.

In closing argument, Mr. Newton argued that the indictment charged that he sold stock to the pension fund at an "artificially inflated price," but the government failed to prove that the price was inflated. Second, Newton argued that his statements and conduct showed that he believed in the legitimacy of his company, he believed it was ultimately a good investment, and he never intended to harm the pension fund. DE222:49-81. Mr. Newton was convicted on all counts.

There was no actual loss. *See* PSI ¶¶ 18, 21. According to the Pre-Sentence Investigation Report ("PSI"), the base offense level for Mr. Newton's offense, pursuant to U.S.S.G. § 2B1.1(a)(1), was 7. The PSI added an eight-level increase,

2

finding that the intended pecuniary loss was between $70,000 and $120,000, based on the total $80,000 invested by the fund.  See PSI ¶ 26.

Mr. Newton argued that the district court should find no loss because if the fund had attempted to buy as many shares on the free market, it would have driven up the price. *See* 205:13-14.  Mr. Newton presented the court with testimony of government experts in other cases supporting this position.  *See* DE178; 187. Newton's sentencing memorandum also incorporated trading data provided by the government, showing that the market price for RLAB stock was higher approximately one-year after the offense.  DE170.

At the sentencing hearing, both Mr. Newton and the government had expert witnesses present who were prepared to testify as to the loss amount.  The district court refused to consider the expert testimony, stating "Well, I don't think I have a doubt about how it should be calculated."  The court believed that, because there was "no reason for this stock to have been purchased in the first place," the entire purchase price was the loss amount.  DE205:20.

Newton was allowed to proffer testimony from his expert, Dr. Pomerantz, who would have testified that even though the fund received restricted shares, the discount in value was offset by the fund's ability to purchase such a large block of stock without driving up the market price.  *See* DE205:38. Mr. Newton later submitted an

3

affidavit from Dr. Pomerantz stating that he would have testified that the fund suffered no economic loss. DE215-1.

The court found that Dr. Pomerantz' proposed testimony was irrelevant because "[o]nce anybody knew at the time of the restrictive nature of the stock . . . , the stock is worthless." DE205:35-36. The court determined that the entire purchase price was loss, without any offset for the value of the stock the fund received.

In his appeal to this Court, Mr. Newton argued, *inter alia*, that the government failed to prove the charges in the indictment because although he undisputedly paid the kickback, each crime specifically alleged in the indictment required proof of a material misrepresentation and he had made none. All terms of the deal were set by the government; Newton merely agreed. Prior to oral argument, Newton submitted *United States v. Pendergraft,* 297 F.3d 1198, 1209 (11th Cir. 2002), which held that a threat to file false affidavits in connection with a civil lawsuit was not a "scheme to defraud," where the recipients could not have been fooled by the false statements.

Newton also argued that the district court erred by refusing to consider the available evidence regarding stock valuation, and by sentencing him based on speculation that the fund would have become "worthless" once the fraud was revealed. Newton argued that in *United States v. Snyder*, 291 F.3d 1291 (11th Cir. 2002), the Court held it was error for a sentencing court to refuse to consider the

4

actual value of a stock, where such information was reasonably available to it. Newton also cited *Snyder*, *United States v. Tatum*, 138 F.3d 1344, 1346 (11th Cir. 1998), and *United States v. Medina*, 485 F.3d 1291 (11th Cir. 2007), in support of his argument that the fact that a transaction is procured by fraud does not turn the entire value of the transaction into intended loss.

In an unpublished opinion issued on March 19, 2014, the Court affirmed Newton's conviction and sentence. The Court wrote that "[a] 'scheme to defraud' has been broadly defined, and it may include more than fraudulent misrepresentations." *United States v. Newton*, 2014 WL 1045685, *7 (11th Cir. Mar. 19, 2014) (citing *United States v. Svete*, 556 F.3d 1157, 1161-62 (11th Cir. 2009) (*en banc*)). The opinion did not address *Pendergraft*.

The Court also affirmed the loss calculation, stating: "the District Court found that the Pension Plan would not have bought the stock at all in the absence of the fraud, and found that, in light of the fraud, the Pension fund held stock that was essentially worthless." *See Newton*, 2014 WL 1045685 at *11. The opinion did not address *Snyder*, *Tatum*, or *Medina*.

This Petition follows.

## ARGUMENTS IN SUPPORT OF REHEARING

## I.

## A "scheme to defraud" requires proof of a material misrepresentation.

The panel opinion fundamentally deviated from the law of this circuit and the Supreme Court by holding that material misrepresentations are not essential elements of the mail and securities fraud statutes. *See United States v. Newton*, 2014 WL 1045685, *7 (11th Cir. Mar. 19, 2014) ("A 'scheme to defraud' has been broadly defined, and it may include more than fraudulent misrepresentations." ) (citation omitted). This Court's *en banc* review is necessary to remedy the error and clarify the law of this Court.

Both the federal mail and securities fraud statutes require proof of a material misrepresentation. *See United States v. Hasson*, 333 F.3d 1264 (11th Cir. 2003) ("A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts."). In his briefs to this Court, Newton argued that there was no evidence that he made any misrepresentation in order to induce the pension fund to purchase stock at an inflated price.

Newton further argued that any such misrepresentation could not have been "material," since all terms of the deal were defined by the relevant decision makers.

6

He cited *United States v. Wetherald*, 636 F.3d 1315, 1324 (11th Cir. 2011) for the proposition that "[i]nformation is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed." *See* Corrected Br. at 17-19; Reply Br. at 17-19. Prior to oral argument, Newton submitted *United States v. Pendergraft,* 297 F.3d 1198 (11th Cir. 2002), as supplemental authority. In *Pendergraft*, the Court held that the defendants' threat to file false affidavits in connection with a civil lawsuit was not a "scheme to defraud" within the meaning of the mail fraud statute, 18 U.S.C. § 1341, because the recipient of the threat knew that the statements in the affidavit were false. *See Pendergraft*, 297 F.3d at 1209.

The panel opinion does not address either *Wetherald* or *Pendergraft*. Instead, the opinion cites *United States v. Svete*, 556 F.3d 1157, 1161-62 (11th Cir. 2009) (*en banc*) for the proposition that "[a] 'scheme to defraud' has been broadly defined, and it may include more than fraudulent misrepresentations." *United States v. Newton*, 2014 WL 1045685, *7 (11th Cir. Mar. 19, 2014). However, *Svete* does not so hold. There were indisputably misrepresentations in *Svete*. The issue was whether the mail fraud statute "requires proof that the scheme be capable of deceiving a reasonably prudent person or whether schemes aimed at the gullible or improvident are also

7

prohibited." *Svete*, 556 F.3d at 1159.  Nothing in *Svete* suggests that a mail fraud conviction may be obtained in the absence of a material misrepresentation.

To the contrary, the *Svete* opinion traces the history of the statute, which has consistently required misrepresentations.  *See Svete*, 556 F.3d at 1163 ("More than a century ago, in its first interpretation of the statute, the Supreme Court held that the prohibition of mail fraud 'includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future'") (quoting *Durland v. United States*, 161 U.S. 306, 313, 16 S. Ct. 508 (1896)); *id*. at 1163 ("Although the common law crime of cheat applied only to frauds that would deceive a person of ordinary prudence, by the time Congress enacted the prohibition of mail fraud, statutes that prohibited false pretenses has remedied this deficiency in the common law").  Neither *Svete*, nor any other precedent of this Court, holds that a mail or securities fraud conviction may be obtained in the absence of a material misrepresentation or omission.

Such a holding would be inconsistent with *Neder v. United States*, 521 U.S. 1, 25, 119 S. Ct. 1827 (1999), which held "that materiality of falsehood is an element of the federal . . . fraud statutes."  *See Svete*, 556 F.3d at 1163 (quoting same).  Furthermore, to interpret the phrase "scheme to defraud" so broadly as to not require an actual misrepresentation or omission would subject the statutes to vagueness

8

challenges.  *See Skilling v. United States*, 561 U.S. 358, 130 S. Ct. 2896 (2010) (narrowly construing criminal statute to avoid vagueness problem).  It is not enough that the fictitious pensioners might have been deceived in some hypothetical way, because they were not persons to whom actual misrepresentations were made.

In this case, the government did not allege that Mr. Newton made any material misrepresentations to the undercover agents.  Newton's "attemp[t] to conceal the kickback agreement with a fictitious consulting agreement," or his "numerous e-mails referring to advice he never received," *Newton*, 2014 WL 1045685 at * 8, can not be considered material misrepresentations, because Newton could not possibly have deceived the persons to whom the statements were addressed.  *See Pendergraft,* 297 F.3d at 1209 ("Such falsity might have deceived some, but it could not deceive Marion County.").  *See also id*. (citing *Norton v. United States*, 92 F.2d 753, 755 (9th Cir. 1937) ("There can be no intent to deceive where it is known to the party making the representations that no deception can result.")). Because Mr. Newton did not make any material misrepresentation Mr. Newton respectfully asks this Court to order rehearing *en banc*.

9

## II.

**The panel opinion erred in affirming a loss amount based on speculation that the stock was "worthless," where the district court refused to consider expert testimony regarding the value of the stock.**

Mr. Newton also asks for rehearing *en banc* because the panel opinion affirmed a finding of loss based entirely on speculation, after the district court expressly refused to consider available expert testimony. This was in violation of numerous precedents of this Court and warrants rehearing.

The government tried this case on the theory that the price of the stock Mr. Newton sold to the pension fund was "artificially inflated" because the fund received restricted stock at the market price for free-trading stock. Both Newton and the government had experts available to assist the court in assessing loss based on this theory. The district court erred when it refused to consider this evidence. *See United States v. Snyder*, 291 F.3d 1291, 1295 (11th Cir. 2002) (holding that district court erred in finding that calculating loss to victims was not feasible and substituting intended gain for loss amount).

The Court further applied an invalid theory of loss when it refused to offset the loss amount by the value of the stock given to the pension fund. The panel opinion

10

accepted the district court's erroneous reasoning that the entire purchase price of the stock was loss, because "the Pension Plan would not have bought the stock at all in the absence of the fraud." *Newton*, 2014 WL 1045685 *14. Yet, that could be said in every case of fraud, and the law clearly requires that loss amount be reduced by the value of services or property given to the victim. *See United States v. Tatum*, 138 F.3d 1344, 1346 (11th Cir. 1998) (vacating sentence where district court used the entire gross proceeds of fraudulently-procured contracts as loss without reducing the amount by the value of services rendered); *United States v. Medina*, 485 F.3d 1291, 1303 (11th Cir. 2007) (vacating sentence where the district court used the entire amount Medicare paid out in claims as a "loss," where there was insufficient evidence that the claims were not medically necessary).

The panel opinion fails to address *Snyder*, *Tatum*, or *Medina*. The opinion states only that district court "gave a reasonable estimate of the loss that accounted for the likely effect that the undisclosed fraud would have on the market value of Defendant's company stock." *Newton*, 2014 WL 1045685 at *8. This was error because there was ***no evidence whatsoever*** that the undisclosed fraud would have affected the market value of the stock. *See* Reply Brief at 3-5.

The sentence was in clear violation of the law of this Circuit. *See Snyder*, 291 F.3d at 1296 (finding that government's accounting report overestimated loss

11

"because, unlike the circumstances presented in [another case], the stock was not totally worthless after the conspiracy was discovered"); *Medina*, 485 F.3d at 1304 (noting that a court "must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines") (citations omitted).  *See also United States v. Olis*, 492 F.3d 450, 546 (5th Cir. 2005) ("[T]here is no loss attributable to a misrepresentation unless and until the truth is subsequently revealed and the price of the stock accordingly declines.").

Wherefore, Mr. Newton respectfully asks this Honorable Court to grant rehearing *en banc*.

12

## CONCLUSION

Based on the foregoing, Mr. Newton respectfully asks this Court to grant rehearing *en banc*.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

 *s/Tracy Dreispul*
Tracy Dreispul
Assistant Federal Public Defender
150 West Flagler Street, Suite 1500
Miami, Florida 33130-1555
Telephone No. (305) 536-6900

13

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 9th day of April, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and sent sixteen copies to the Clerk of the Court by third party commercial carrier for delivery within three days.  I also certify that the foregoing document is being served this day via CM/ECF on Laura Thomas Rivero, Assistant United States Attorney, 99 N.E. 4th Street, Miami, FL 33132 and Kathleen Salyer, Assistant United States Attorneys, 99 N.E. 4th Street, Miami, Florida 33132.


*s/ Tracy Dreispul*
Tracy Dreispul


14

**APPENDIX A-1**